USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________ No. 96-1409 JUAN A. DAVILA-LOPES, Plaintiff, Appellant, v. JOSE SOLER ZAPATA, ET AL., Defendants, Appellees. ____________________ ERRATA SHEET ERRATA SHEET The opinion of this Court issued on April 17, 1997, is corrected as follows: Page 2, second paragraph, line 5, change "appellants" to "appellees." United States Court of Appeals For the First Circuit ____________________ No. 96-1409 JUAN A. DAVILA-LOPES, Plaintiff, Appellant, v. JOSE SOLER ZAPATA, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Guillermo Ramos Luina for appellant. _____________________ Sigfredo Rodriguez-Isaac, Assistant Solicitor General, Department _________________________ of Justice, with whom Carlos Lugo Fiol, Solicitor General, and Edda _________________ ____ Serrano Blasini, Assistant Solicitor General, were on brief for the _______________ Commonwealth of Puerto Rico. Eli B. Arroyo for appellees Ausberto Alejandro Benitez, Jose M. _____________ Dalmasy Montalvo and Edgar Belmonte. ____________________ April 17, 1997 ____________________ COFFIN, Senior Circuit Judge. This is an appeal by a _____________________ physician from a judgment dismissing his 1983 complaint against officials of a Puerto Rico regional hospital who rejected his initial application for limited courtesy privileges without explanation or hearing, in violation of hospital by-laws. It raises the interesting question whether the hospital's detailed set of procedural regulations created a property interest entitling appellant to procedural due process. We conclude that they did not. Appellant, a licensed physician, has invoked 42 U.S.C.  1983, claiming that his constitutional right to procedural due process was violated by defendants, who are various officials responsible for the operation of the Guayama Area Hospital (the "Hospital").1 While some of the appellees argued below that no state action was involved, the argument was only very cursorily pursued on appeal, without citation to authorities. Since the Hospital is financed by the Commonwealth, its by-laws were approved by the Secretary of Health, and its "Governing Body" or final decider is the Secretary or his Regional Director, we, like the district court, shall assume that the 1983 prerequisite of state action is satisfied. Appellant seeks a declaratory  ____________________ 1 There are two groups of defendants-appellees. One consists of the present and former Secretary of the Department of Health of the Commonwealth, Regional Director of the Department for the Southern Region, and Chief Executive Director of the Guayama Area Hospital. The second consists of the three hospital officials, Dr. Alejandro and two other doctors, who constituted the Executive Committee which initiated the action complained of.  Our reference to "the Hospital" will embrace the interests of all. -3- judgment, compensatory and punitive damages, and an injunction giving him his requested hospital privileges.2 Factual Background __________________ The factual setting is the following. In 1986 appellant joined the Hospital's regular staff in the Department of Internal Medicine. In 1987, after some history of difficulties, he was dismissed from the Medical Faculty of the University charged with operating the Hospital, and all his privileges were terminated. Appellant thereupon brought suit in a Commonwealth Superior Court. That court rendered a judgment on June 7, 1990 that the Hospital acted on ample grounds, citing some seven reasons proffered by the Hospital, ranging from appellant not making rounds when on call, to being tardy or not attending outpatient clinics, and seeking out intensive care patients who were insured.  Less than ten months later, on April 29, 1991, appellant applied anew for Hospital privileges. Not having a contract with the University, he was eligible for only Courtesy Privileges, which were reserved for physicians who would not admit more than  ____________________ 2 Appellant mentions in his brief a pendent state claim which he asserts was improperly and inadvertently included in the dismissal of the complaint. He asks us, in the event of an affirmance, to clarify the record to show that the dismissal of the state claim was for lack of jurisdiction. We see nothing in the complaint that rises to the dignity of a state claim.  Although at one point it invokes 28 U.S.C. 1367 (concerning supplemental jurisdiction), the only reference to state law is found in the prayer for relief from, inter alia, violation "of _____ ____ the applicable laws of the Commonwealth of Puerto Rico and regulations." This falls far short of identifying any pendent state claim.  -4- fifteen patients for hospital care per year. Thereafter, appellant faced a period of apparent stonewalling by the hospital, as he made repeated inquiries as to the status of his request. Eventually, on November 11, 1991, his request for privileges was denied by the Regional Director and he sought review. A hearing of sorts was held on January 17, 1992, at which appellant was unable to obtain a statement of reasons for the rejection of his request. Shortly thereafter, appellant was notified that the decision to reject his application for privileges had been ratified. On October 23, 1992, appellant filed his complaint in the present case. The By-Laws of the Hospital are comprehensive and procedurally detailed. There are five categories of staff, of which the Courtesy Staff is one, along with Consulting, Active, Associate, and Special Associate Staff. (Art. III, Sec. 2) Appointment of the Courtesy Staff is "through regular Medical Staff channels." (Art. VIII, Sec. 5) After an applicant furnishes some fifteen different documents (Art. III, Sec. 3) and various releases and authorizations (Art. III, Sec. 4), subsequent steps include a written report by the Department Chief, deliberation and recommendation by the Executive Committee, and, in the event of an adverse recommendation, a hearing before a specially convened hearing committee.  Prior to any hearing, a notice to the practitioner "shall contain a concise statement of the practitioner's alleged acts or omissions, including [patient records] or the other reasons or -5- subject matter forming the basis for the adverse recommendation." Provisions governing hearings cover the composition of the panel, the duties of the moderator, allowance for representation, the examining and cross examining of witnesses, the introduction of exhibits, the making of a record, and the filing of written memoranda. In hearings on most issues, the By-Laws place the burden on the institutional body to show that the adverse recommendation was not "arbitrary, irrational or capricious." But in hearings involving a "Denial of initial appointment to staff status" (Item 1, Article IV, page 16 of By-Laws) or a "Denial of requested clinical privileges" (Item 7, Article IV, page 17 of By-Laws), the By-Laws provide that it will be the practitioner who shall thereafter be responsible for supporting by evidence his challenge to the recommendation or action and shall prevail only if he establishes by clear and convincing evidence that the recommendation or action was arbitrary, irrational or capricious. (Page 26 of By-Laws) Moreover, in hearings relating to these same items, the evidence presented by the . . . Executive Committee in support of its initial determination . . . may relate to . . . negative judgments of such body regarding information contained in the practitioner's application or request, and related references and documentation to the effect that such materials, for reasons explained by such body, fail to establish an acceptable basis for granting the application or request. Id. __ Analysis  _________ It is clear that the process given to appellant did not follow the steps set forth in the By-Laws. The appellees, like the district court, relied for the notice requirement of due process on the appellant's knowledge of the 1987 charges of -6- misconduct, as contained in the "Findings of Fact" of the Commonwealth Superior Court. This would seem to be a shaky foundation in light of the passage of time, although we note the entire absence of any indication given by appellant that changes in his conduct could be expected. The critical and threshold question is whether appellant's interest in being given courtesy privileges is "grounded in substantive legal relationships defined by . . . specific state or federal rules of law."3 As the Supreme Court explained in Board of Regents v. Roth, 408 U.S. 564, 577 (1972), to have a ________________ ____ constitutionally protected interest, one must have "more than an abstract need," one must have "a legitimate claim of entitlement," "defined by an existing rule or understanding that stems from an independent source such as state law . . . ." For example, where rules so defined welfare eligibility that an applicant had a right to a hearing to attempt to demonstrate that he was within the statutory definition, this met the above requirements. See Goldberg v. Kelly, 397 U.S. 254, 268 (1970); ___ ________ _____ see also Bishop v. Wood, 426 U.S. 341 (1976); Meachum v. Fano, ___ ____ ______ ____ _______ ____ 427 U.S. 215, (1976). Our own opinion in Lowe v. Scott, 959 F.2d 323, 338 (1st ____ _____ Cir. 1992), is relied upon by appellant for the proposition that requirements of adequate process in decisions "affecting" hospital privileges can create a property interest. Appellant  ____________________ 3 Laurence H. Tribe, American Constitutional Law 677 (2d ed. 1988). -7- overreaches. In that case plaintiff was protesting the suspension of a staff privilege to supervise nurse midwives. See ___ id. at 325. When we stated that "[A] state may create the __ property interest in privileges directly by imposing the requirement . . . that all hospitals provide physicians adequate process in decisions affecting privileges," we were speaking in the context, made clear by the preceding sentence, of an action taking away something that had been enjoyed -- i.e. that a public hospital could create a property interest by "regulations guaranteeing that these privileges will not be revoked without _______ cause or a hearing." Id. at 338 (emphasis supplied). This __ meaning was reaffirmed when we subsequently referred to the kind of state law that would be applicable to all hospitals, i.e., a statute or court decision "requiring that the revocation of __________ hospital privileges comport with due process." Id. (emphasis __ supplied).4 Appellant does not assert that any preexisting status or privilege was taken from him. Rather, his claim to a property interest is based on the detailed procedural rules of the By-Laws of the Hospital, together with what he asserts is such a  ____________________ 4 Similarly, appellant has sought to overextend Hernandez _________ v. Asociacion Hosp. del Maestro, 106 P.R. Offic. Trans. 96 _____________________________ (1977). Appellant cites it for the proposition that actions by hospitals that "affect" staff privileges must comply with due process. But that case involved hospital action in canceling membership on a hospital's medical staff and summarily suspending all privileges. See id. at 101. The Puerto Rico Supreme Court ___ __ detailed the procedures which were triggered by a suspension or revocation and concerned itself solely with ascertaining whether they had been followed. See id. at 106.  ___ __ -8- stringent substantive limitation on the Hospital's discretion that he has "a legitimate claim of entitlement," citing Laborde- ________ Garciav. PuertoRico TelephoneCo., 993F.2d 265,267 (1stCir. 1993). ______ _______________________ The existence of a detailed set of procedural rules is clearly inadequate to create a constitutionally protected property right. As Professor Tribe notes, "the existence of a 'careful procedural structure' is not enough," although he characterizes such an approach as "narrowly formalistic."5 In Hewitt v. Helms, 459 U.S. 460, 471 (1983), the Supreme Court made ______ _____ it clear that "a careful procedural structure," without more, cannot create a constitutionally protected interest, saying It would be ironic to hold that when a State embarks on such desirable experimentation it thereby opens the door to scrutiny by the federal courts, while States that choose not to adopt such procedural provisions entirely avoid the strictures of the Due Process Clause. The first part of appellant's argument therefore fails.6 This brings us to appellant's last argument, that appellees' discretion was so limited that appellant could reasonably expect to obtain the desired status if he could present his case. The Supreme Court articulated the possibility that where stringent  ____________________ 5 Tribe, supra note 3, at 698. _____ 6 This is not to say that it makes any policy sense to enact comprehensive rules and then not apply them to those who, facially, are covered by them. It may be that appellees feared another lawsuit if they advanced reasons for their refusing to grant courtesy privileges to appellant. Ironically, their failure to follow their own rules, however, did not avoid another lawsuit. But, while state law might command faithful adherence to an institution's mandatory rules, and result in some remedy or sanction, violating a procedural rule does not alone accomplish the creation of a protectible constitutional interest. -9- regulations strictly limit state officials' discretion, these procedures may give rise to a constitutionally protected interest. See Hewitt, 459 U.S. at 472. In that case, state ___ ______ statutes governing the placing of prisoners in administrative segregation limited correction officials' discretion to situations in which there was "a need for control," "a threat of a serious disturbance, or a serious threat to the individual or others," and notices, hearings, investigations, and release conditions were the subject of mandatory provisions. Id. at 470- __ 71 n.6. The Court held that "[T]he repeated use of explicit mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest." Id. at 472.  __ This is to be contrasted with the situation in Olim v. ____ Wakinekona, 461 U.S. 238, 249 (1983), where, despite regulations __________ requiring a hearing before an interstate transfer of an inmate, the Court held that no state-created liberty interest was created since the regulations did not impose "substantive limitations on official discretion." The contours of "substantive limitations" were discussed in Justice Brennan's concurring opinion in Connecticut Board of Pardons v. Dumschat, 452 U.S. 458, 467 ______________________________ ________ (1971), cited with approval by the Olim court, as requiring that ____ "particularized standards" and "objective and defined criteria" guide the State's decision makers. Our own precedents are instructive. In Lombardo v. Meachum, ________ _______ 548 F.2d 13, 15 (1st Cir. 1977), despite prison transfer -10- regulations which contained a statement of purpose, rehabilitation, and a directive to officials to treat inmates "with the kindness which their obedience, industry and good conduct merits," we held that no liberty interest had been created since no significant limitations had been imposed on officials' discretion in ordering transfers.  Quite a different situation was presented in Laborde-Garcia ______________ v. Puerto Rico Telephone Co., 993 F.2d 265 (1st Cir. 1993). A ___________________________ telephone employee sought treatment from the State Insurance Fund within two months after a recent accident. See id. at 266. She ___ __ was terminated from her job because the company concluded that more than twelve months had elapsed since an earlier illness. See id. The company argued that reinstatement was only an ___ __ expectation of reemployment. See id. at 267. However, the ___ __ statute required employers to "reserve" an employee's job and "reinstate" the employee if "no more than 'twelve months' have "lapse[d] . . . from the date of the accident." Id.  __ Then Chief Judge Breyer, writing for our court, said: [T]he workmen's compensation statute so narrows the government's discretion to refuse to reinstate Ms. Laborde (during the relevant twelve months) that it provides her with a 'legitimate claim of entitlement' to that continued employment. That is to say, local law's narrowing of the employer's discretion to decide not to reinstate means that Ms. Laborde could reasonably have believed, and relied upon her belief, that local law would likely permit her to remain employed. Id. __ With these strictures in mind, we assess whether the standards governing the Hospital's extension of privileges are so particularized, objective, and defined, and also narrow the -11- Hospital's discretion so significantly that an applicant in appellant's position could be reasonably confident that he would be granted courtesy privileges. To begin, the substantive standard set forth in the By-Laws is that decisions must not be made arbitrarily, irrationally, or capriciously. Contrary to appellant's argument, these words are not synonymous with "just cause." Decisions could be wrong- headed, based on false assumptions, overcautious or overzealous, penny-pinching or open-handed, and exhibit a poor sense of priorities and yet escape denomination as arbitrary, irrational, and capricious. Moreover, in cases involving the kind of request appellant was making, the burden of proving arbitrariness, etc. had been placed on him. Not only that, but he had the severe burden of proof by clear and convincing evidence. Finally, the decision makers were entitled to arrive at a negative judgment that the materials and information submitted failed "to establish an acceptable basis for granting the application." We cannot believe that words of maximum generality and minimum bite such as "arbitrary, irrational and capricious", twice and perhaps three times diluted by the shifting of burden, the heightening of required proof to carry the burden, and the provision for a catch-all negative judgment of what was "acceptable," suffice to create a constitutionally protectible property right that could serve as the basis for compensatory and punitive damages. Administrative officials generally are held under administrative procedure acts to a standard free of -12- arbitrariness, irrationality, and caprice. See Administrative ___ Procedure Act, 5 U.S.C.A. 706(2)(A) (West 1996). It cannot be that an explicit articulation of the same standard changes an "abstract need or desire" into a protectible right. In short, their discretion was not so circumscribed that such an interest was created.  Affirmed. Only the Alejandro appellees are entitled to ____________________________________________________________ costs.7  ______  ____________________ 7 Normally, a successful appellee is entitled to costs. In this appeal we have found the Commonwealth's brief so unhelpful that we depart from the usual rule. -13-