MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 134
Docket:      Ken-20-32
Argued       October 6, 2020
Decided:     November 17, 2020

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.


JOHN DOE[1]

v.

BOARD OF OSTEOPATHIC LICENSURE


CONNORS, J.

[¶1]  John Doe, DO, filed a three-count complaint against the Maine Board

of Osteopathic Licensure.  Two counts seek a declaration pursuant to the Maine

Declaratory Judgments Act, 14 M.R.S. §§ 5951-5963 (2020), that pending

disciplinary complaints against him must be dismissed because the Board did

not provide him the sixty-day notice required by 32 M.R.S. § 2591-A(1) (2020).[2]

---

[1]  We use a pseudonym because "all complaints and investigative records of the licensing boards, commissions and regulatory functions within or affiliated with the Department of Professional and Financial Regulation are confidential during the pendency of an investigation.  Those records become public records upon the conclusion of an investigation unless confidentiality is required by some other provision of law."  10 M.R.S. § 8003-B(1) (2020).

[2]  Section 2591-A(1) provides, in relevant part, as follows:

The board shall investigate a complaint, on its own motion or upon receipt of a written complaint filed with the board, regarding noncompliance with or violation of this chapter or of rules adopted by the board.

The board shall notify the licensee of the content of a complaint filed against the licensee as soon as possible, but, absent unusual circumstances justifying delay, not later than 60 days from receipt of this information.  The licensee shall respond within

2

The third count alleges that the Board has generally failed to address the complaints in a timely manner, as he contends is required under the Maine Administrative Procedure Act (APA), 5 M.R.S. § 11001(2)(2020).[3]

[¶2]  The Superior Court (Kennebec County, *Murphy, J.*) granted the Board's motion to dismiss Doe's complaint pursuant to M.R. Civ. P. 12(b)(1) and (6) for failure to state a claim upon which relief may be granted (Counts 1 and 2) and lack of subject matter jurisdiction (Count 3).  We affirm dismissal of all three counts on the former basis, because section 2591-A does not, as Doe claims, require the Board to dismiss the complaints against him, and because he is not entitled to relief for the Board's allegedly dilatory conduct given the absence of prejudice to him.

## I.  BACKGROUND

[¶3] Doe's complaint alleges the following facts, which we view as though they were admitted.  *See Nadeau v. Frydrych*, 2014 ME 154, ¶ 5, 108 A.3d 1254.  "The general rule is that only the facts alleged in the complaint may be

---

30 days.  The board shall share the licensee's response with the complainant, unless the board determines that it would be detrimental to the health of the complainant to obtain the response.  If the licensee's response to the complaint satisfies the board that the complaint does not merit further investigation or action, the matter may be dismissed, with notice of the dismissal to the complainant, if any.

[3] "Proceedings for judicial review of . . . the failure or refusal of an agency to act shall be instituted by filing a petition for review in the Superior Court . . . ."  5 M.R.S. § 11002(1) (2020).

considered on a motion to dismiss and must be assumed as true." *Moody v. State Liquor & Lottery Comm'n,* 2004 ME 20, ¶ 8, 843 A.2d 43.

[¶4] Doe is currently licensed to practice osteopathic medicine. The Board had, up to the filing of Doe's complaint, failed to adjudicate nine matters pending against Doe, with one complaint having been pending for over five years. Additionally, the Board failed to provide Doe with notice of six of the complaints against him within the sixty-day statutory deadline in 32 M.R.S. § 2591-A(1).

[¶5] Doe filed his complaint on March 26, 2019; the Board filed its motion to dismiss on April 10, 2019; and the Superior Court granted the Board's motion on January 7, 2020. Doe timely appeals. *See* 14 M.R.S. § 1851 (2020); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

### A. Standard of Review

[¶6] In an appeal from an order on a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6), "[w]e review the legal sufficiency of the complaint de novo," *Nadeau,* 2014 ME 154, ¶ 5, 108 A.3d 1254, and we view the complaint "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief

4

pursuant to some legal theory." *Johanson v. Dunnington,* 2001 ME 169, ¶ 5, 785 A.2d 1244 (quotation marks omitted).[4]

B.     Count 1

[¶7]   Count 1 of Doe's complaint seeks a general interpretation of 32 M.R.S. § 2591-A(1).  For example, the count seeks a declaration that the term "unusual circumstances" included in section 2591-A(1) (*see supra* n.2) means "circumstances that are uncommon, rare or atypical, as opposed to common, usual or typical."

[¶8]  The issue of "whether a declaratory judgment should be issued rests in the sound discretion of the trial court."  *E. Fine Paper, Inc. v. Garriga Trading Co.,* 457 A.2d 1111, 1112 (Me. 1983).  The Superior Court did not address the

---

[4] The Superior Court indicated that it was dismissing the declaratory judgment counts for failure to state a claim and the APA claim for lack of subject matter jurisdiction.  If the defect in the APA claim were jurisdictional, then we would have to affirm the dismissal on that basis.  *See Tomer v. Me. Hum. Rights Comm'n,* 2008 ME 190, ¶ 14, 962 A.2d 335.  The Board raised two jurisdictional issues as to Doe's APA claim: (1) a lack of final agency action or failure to exhaust administrative remedies; and (2) lack of standing.  Because this is a claim of failure to act, the Board's first argument fails—Doe is challenging a lack of action, not an affirmative action that is not yet final.  With respect to the Board's second argument, one could view Doe as not "aggrieved" as required to advance an APA claim under 5 M.R.S. § 11001(1) (2020) because, as discussed *infra*, he has alleged no prejudice caused by the Board's actions.  We have interpreted the APA's "aggrieved" standard for standing to require that the challenged agency action or inaction operate "prejudicially and directly upon the party's property, pecuniary or personal rights."  *Lindemann v. Comm'n on Governmental Ethics & Election Prac.,* 2008 ME 187 ¶ 14, 961 A.2d 538 (quotation marks omitted).  But we view Doe's complaint as alleging that the sheer length of time the investigations have been pending render the Board's inaction unreasonable within the meaning of the statute, entitling him to relief.  We view the question of whether a subject of an ongoing agency investigation may seek relief under the APA on grounds of unreasonable delay in the absence of prejudice as a question best addressed under M.R. Civ. P. 12(b)(6).

viability of Count 1 separately from Count 2. This was a logical course of action because Count 2 presents a specific claim generated by Doe's particular circumstances, while Count 1 is abstract and generic. *See Pilot Point, LCC v. Town of Cape Elizabeth,* 2020 ME 100, ¶ 31, 237 A.3d 200 (declining to issue a declaratory judgment concerning speculative facts, for it would be an impermissible advisory opinion). Therefore, the disposition of Count 2 also disposes of the claim raised in Count 1.

C.    Count 2

[¶9]  Count 2 asserts that section 2591-A(1) creates a mandatory time bar similar to a statute of limitations. Based on this interpretation of the statute, Doe requests a declaration that the Board violated his due process rights, both procedural and substantive, when it failed to dismiss the disciplinary proceedings pending against him for which he had not received notice within sixty days.

1.    Statutory Language

[¶10]  We review the meaning of a statute de novo. *Fuhrmann v. Staples the Off. Superstore E., Inc.,* 2012 ME 135, ¶ 23, 58 A.3d 1083. If a statute is ambiguous, we defer to a state agency's reasonable interpretation of a statute it administers. *Id.* Here, section 2591-A(1) includes a deadline, but it does not

6

indicate what the consequences are for failing to meet that deadline. The Board argues that the sixty-day notice period is directory, not mandatory, and we agree.[5]

[¶11] In the context of agency procedural deadlines, and in the absence of a clear manifestation in a statute to the contrary, statutory language such as "shall" is directory, not mandatory, and does not wrest from the agency jurisdiction to act if the deadline is not met. For example, we held that the Workers' Compensation Board had jurisdiction to issue an order after a statutory twenty-one-day deadline to act had expired, noting that "[w]e do not create a remedy or penalty when a statute is silent regarding the sanction for failure of an agency to timely act." *Bureau v. Staffing Network, Inc.*, 678 A.2d 583, 590 (Me. 1996). Similarly, we held in *Anderson v. Commissioner of the Department of Human Services* that despite the use of the word "must" in a statute establishing when the Department was required to recoup an overpayment, "statutory provisions requiring an act to be done within a certain time are directory and not mandatory or jurisdictional unless the statute manifests a clear intent to the contrary." 489 A.2d 1094, 1099 (Me. 1985); *see*

---

[5] The Board also argues that it did not violate a deadline because its investigations relate to "reports," not "complaints," within the meaning of the statutory scheme. *See* 32 M.R.S. § 2591-A(1); 24 M.R.S. §§ 2505-2506 (2020). But as noted *supra*, at this stage of the proceedings, we must assume that Doe's allegations referencing pending "complaints" are true.

*also Guar. Tr. Life Ins. Co. v. Superintendent of Ins.,* 2013 ME 102, ¶ 39, 82 A.3d 121; *Davric Me. Corp. v. Me. Harness Racing Comm'n*, 1999 ME 99, ¶ 13, 732 A.2d 289.

[¶12]  Title 32 M.R.S. § 2591-A(1), despite the use of the word "shall," does not establish a remedy or a penalty for the Board's failure to adhere to the sixty-day deadline.  Statutes that intend to create a statute of limitations or a time bar use language to that effect.  *See, e.g.,* 14 M.R.S. § 8107(4)(2020) ("No claim or action shall be commenced against a governmental entity or employee in the Superior Court unless the foregoing notice provisions are substantially complied with."); 24 M.R.S §§ 2902-2903 (2020) (setting a three-year statute of limitations for professional negligence and requiring the filing of a notice of claim prior to the commencement of a lawsuit).

[¶13]  Indeed, looking at the language in section 2591-A(1) as a whole, the Legislature was clear as to when dismissal *is* appropriate: when the Board determines a complaint lacks merit.  *See supra* n.2.  The lack of similar language with respect to the notice deadline is not dispositive, but telling.

[¶14]  In the absence of clear indication that the provision requiring notice within sixty days is meant to create a statute of limitations after which time the Board would lose jurisdiction to act on a complaint, we defer to the

8

Board's reasonable reading of section 2591-A(1) and conclude that the deadline is directory and does not require a dismissal upon the expiration of this time period.

2.    Constitutional Claims

[¶15]   Next, we turn to Doe's constitutional claims as they relate to Count 2 of his complaint.   Doe alleges both procedural and substantive due process violations by the Board in its handling of the disciplinary complaints pending against him.[6]

a.    Procedural Due Process

[¶16]  "In a procedural due process challenge, we must first determine whether the governmental action has resulted in a deprivation of life, liberty, or property." *Guardianship of Hughes,* 1998 ME 186, ¶ 9, 715 A.2d 919.  Here, Doe has a property interest in his existing license, *see Munjoy Sporting & Athletic Club v. Dow*, 2000 ME 141, ¶ 11, 755 A.2d 531, but he does not claim to have

---

[6] Doe has alluded to both the Maine and United States Constitutions in asserting a due process violation.  In the context of the claims raised here, we find no material difference in the results of the application of article I, section 6-A of the Maine Constitution from that obtained under the Fourteenth Amendment of the United States Constitution.

been deprived of that license. The pending nature of the Board's investigations is not alleged to have adversely affected him in any way.[7]

[¶17]  Instead, Doe alludes to a right to "statutory due process," apparently arguing that because he contends the deadline in section 2591-A(1) is mandatory and requires dismissal, the statute created a protectable property interest. But, as noted, the statute is not mandatory, so his argument fails on this ground alone. Additionally, a protectable property interest under the due process clause is defined by state law, *Bd. of Regents v. Roth,* 408 U.S. 564, 577 (1972), and there is no property interest in a process. *See Jackson v. Town of Searsport*, 456 A.2d 852, 858 (Me. 1983) ("the Town of Searsport's failure to follow the statutory procedures for processing his general assistance applications infringed no constitutionally protected property interest of the Plaintiff"); *Gregory v. Town of Pittsfield,* 479 A.2d 1304, 1308 (Me. 1984) (holding that the failure to follow statutorily prescribed procedures was not a violation of due process because there is "no property interest in statutory procedures themselves"); *Botting v. Dep't of Behav. & Dev. Servs.,* 2003 ME 152, ¶ 23, 838 A.2d 1168 (holding that "[t]he interest in procedure itself is not an

---

[7]  At oral argument, Doe's counsel alluded vaguely to a reciprocal accreditation effect, but the complaint is devoid of any such allegations, and none was briefed. *See Mehlhorn v. Derby,* 2006 ME 110, ¶ 11, 905 A.2d 290.

interest protected by the Fourteenth Amendment"); *see also Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541 (1985) ("'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty."); *Davila-Lopes v. Zapata,* 111 F.3d 192, 195 (1st Cir. 1997) ("The existence of a detailed set of procedural rules is clearly inadequate to create a constitutionally protected property right.").

[¶18]  Doe might have a liberty interest in practicing his lawful occupation.  *Roth*, 408 U.S. at 573; *Bd. of Overseers of the Bar v. Lefebvre,* 1998 ME 24, ¶ 15, 707 A.2d 69.  Doe, however, claims no infringement upon any such interest.  He might also have a due process right to be free from damage to his reputation.  *See Doe v. Williams,* 2013 ME 24, ¶ 62, 61 A.3d 718 ("The Supreme Court has articulated the 'stigma-plus test' to determine whether procedural due process rights are implicated when the state imposes a stigma on an individual that negatively affects his reputation." (footnote omitted) (quoting *Paul v. Davis,* 424 U.S. 693, 709 (1976))).  The Board's proceedings are confidential, however, and therefore Doe has not alleged any damage to his reputation.

[¶19]  In sum, Doe's procedural due process claim fails as a matter of law because he has not alleged a deprivation of any protectable property or liberty interest.  *See Botting,* 2003 ME 152, ¶ 23, 838 A.2d 1168.

b.      Substantive Due Process

[¶20]   The lack of an adversely affected property or liberty interest dooms Doe's substantive due process claim as well.[8]  That section 2591-A(1)'s deadline is not mandatory takes the wind out of the sails of Doe's substantive due process argument.   To state a substantive due process claim, a plaintiff must allege facts showing that the government has engaged in conduct that "shocks the conscience and violates the decencies of civilized conduct." *LeGrand v. York Cnty. Judge of Prob.,* 2017 ME 167, ¶ 38, 168 A.3d 783 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).   Given that Doe has not even alleged prejudice from the Board's conduct, his claim cannot begin to meet this standard.  *See Pagan v. Calderon,* 448 F.3d 16, 33 (1st Cir. 2006) ("the

---

[8]   The basic difference between a substantive and a procedural due process claim is that procedural due process requires that the procedures provided by the state in effecting the deprivation of liberty or property be adequate in light of the affected interest, while substantive due process imposes limits on what a state may do regardless of what procedural protection is provided. *See Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990).  Both types of due process protections require deprivation of a liberty or property interest.  *See Daniels v. Williams*, 474 U.S. 327, 331 (1986) ("By requiring the government to follow appropriate procedures when its agents decide to deprive any person of life, liberty, or property, the Due Process Clause promotes fairness in such decisions.  And by barring certain government actions regardless of the fairness of the procedures used to implement them . . . it serves to prevent governmental power from being used for purposes of oppression." (quotation marks omitted)).

substantive due process doctrine may not, in the ordinary course, be invoked to challenge discretionary permitting or licensing determinations of state or local decisionmakers, whether those decisions are right or wrong"); *DePoutot v. Raffaelly*, 424 F.3d 112, 119 (1st Cir. 2005) ("Mere violations of state law, even violations resulting from bad faith, do not necessarily amount to unconstitutional deprivations of substantive due process.").

D.    Count 3

[¶21] Doe argues in Count 3 that he is entitled to judicial review pursuant to 5 M.R.S. § 11001(2) because the Board has not acted upon the complaints against him within a reasonable time.  Again, his claim suffers from multiple flaws.

[¶22]  First, the only relief he seeks is dismissal of the complaints and cessation of the investigations.  But section 11001(2) provides that "[t]he relief available in the Superior Court shall include an order requiring the agency to make a decision within a time certain." *Id.*  We have construed this language to mean that with respect to failure-to-act claims, this is the only relief we can grant.  *See E. Me. Med. Ctr. v. Me. Health Care Fin. Comm'n,* 601 A.2d 99, 101 (Me. 1992) ("The statute does not authorize sanctions or any other remedy as being appropriate when a hearing has already been scheduled by the agency;

nor do we have the authority to create such a remedy."). We have held that the unavailability of a remedy is a sufficient ground for a motion to dismiss for failure to state a claim. *See D & J Assocs. v. Bd. of Env't Prot.,* 560 A.2d 4, 4 (Me. 1989) (holding that a complaint filed pursuant to 5 M.R.S. § 11001(2) failed to state a claim when the court was without authority to grant the only remedy requested: the granting of a permit by the court when the Board had not acted on the plaintiff's application within 105 days).

[¶23] Regarding the sixty-day notice provision, the only relief available to Doe would be an order requiring the Board to give him notice of the investigations pending against him. But not only has Doe not asked for this relief in his complaint, the complaint demonstrates that Doe has already received actual notice of each complaint.

[¶24] As to the remainder of Doe's APA claim, it also seeks dismissal of the investigations because they have been pending for so long. As noted, we cannot provide the relief he seeks. The only remedy potentially available would be an order, in the nature of mandamus, requiring the Board to act by a date certain.

[¶25] An unreasonable agency delay, although not rising to the level of a constitutional violation, might still violate the APA and require such relief. *See*

5 M.R.S. § 11002(3) (2020) ("petition for review shall be filed within 6 months of the expiration of the time within which the action should *reasonably* have occurred" (emphasis added)); *cf.* 5 M.R.S. § 9056(1) (2020) ("The opportunity for hearing in an adjudicatory proceeding shall be afforded *without undue delay.*" (emphasis added)).

[¶26]    This raises the question of whether delay can become unreasonable or undue in the absence of prejudice.  We have held in a variety of contexts that a successful action based on undue delay must include a showing of prejudice caused by the delay.  *See Seider v. Bd. of Exam'rs of Psychs.,* 2000 ME 118, ¶¶ 25-28, 754 A.2d 986 (holding that a two-and-a-half-year gap between the investigation and hearing was not an undue delay when the party failed to "demonstrate that she was prejudiced in any way by the delay"); *State v. Cyr,* 588 A.2d 753, 756 (Me. 1991) (holding that, in the criminal law context, when applying due process protections against undue delay Maine has required a showing of "actual and unjustifiable prejudice resulting from a delay in seeking an indictment" (quotation marks omitted)); *see also United States v. Eight Thousand Eight Hundred & Fifty Dollars ($ 8,850),* 461 U.S. 555, 569-570 (1983) (holding that an eighteen-month delay "in instituting civil forfeiture proceedings was reasonable" when the plaintiff did not show prejudice caused

by the delay).  We conclude that a showing of prejudice is required to succeed in a claim for failure to act under the APA.

[¶27]  For these reasons, Doe has failed to state a claim upon which relief may be granted as to any of his claims, and, therefore, dismissal was proper pursuant to M.R. Civ. P. 12(b)(6).

The entry is:

Judgment affirmed.

_____

Michael A. Cunniff, Esq. (orally), McCloskey, Mina, Cunniff & Frawley, LLC, Portland, for appellant John Doe

Aaron M. Frey, Attorney General, and Michael B. Miller, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Board of Osteopathic Licensure

Kennebec County Superior Court docket number CV-2019-66
FOR CLERK REFERENCE ONLY