## MAINE REAL ESTATE COMMISSION

v.

### Jane F. KELBY.

Supreme Judicial Court of Maine.

July 13, 1976.

Robert J. Stolt, Asst. Atty. Gen., Augusta, for plaintiff.

Fitzgerald, Donovan & Conley, P. A. by Mark L. Haley, J. Michael Conley, III, Bath, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

On October 6, 1972, plaintiff Maine Real Estate Commission (now the Board of Real Estate Brokers and Salesmen[1]) filed a complaint with the Administrative Hearing Commissioner (now the Administrative Court Judge[2]) seeking the revocation or suspension of defendant Jane F. Kelby's real estate broker's license. The complaint was brought pursuant to 32 M.R.S.A. § 4056(1) and charged Kelby with violating § G ("Count I") and § N ("Count II") of that statute.[3] After a hearing, the Com-

---

1. See P.L.1975, ch. 547.

2. See P.L.1973, ch. 303, § 3.

3. 32 M.R.S.A. § 4056(1) (G, N) [prior to amendments effective October 1, 1975]:

   1. *Suspension or revocation for certain acts.* The commission may, upon its own motion, and shall, upon the verified com-

plaint in writing of any person, provided such complaint or such complaint together with evidence, documentary or otherwise, presented in connection therewith shall make out a prima facie case, investigate the actions of any real estate broker or real estate salesman, or any person who shall assume to act in either such capacity

missioner issued a written decision dated November 28, 1972, adjudicating the defendant guilty as charged in both counts of the complaint. The Commissioner ordered Kelby's license suspended for a period of ninety days beginning on December 13, 1972, and additionally ordered her license suspended for a period of six months, with the reservation that "[S]aid additional six months suspension shall not take effect at this time, but may be added to any penalty imposed for any further violation of the instant nature occurring on or before October 1, 1973."

The defendant exercised her right to appeal the Commissioner's decision to the Superior Court. 5 M.R.S.A. § 2451. That court reversed the Commissioner's finding of guilty on Count I, but affirmed the finding of guilty on Count II and the ninety-day suspension of the defendant's license previously imposed by the Commissioner.[4]

The defendant has now appealed to this Court under authority of 5 M.R.S.A. § 2452 that part of the Superior Court's judgment which affirmed the Commissioner's finding that Kelby is guilty, as charged in Count II of the complaint, of violating 32 M.R.S.A. § 4056(1)(N). We deny the appeal.

■ ■ The arguments advanced by the appellant may be fairly summarized in the following fashion:

1) section 4056(1)(N) is unconstitutionally vague;

2) the court erred in affirming the Commissioner's determination that the defendant violated § 4056(1)(N);

3) section 4056(1)(N) represents an unconstitutional delegation of legislative power to an administrative body;

4) the conduct for which the defendant was found to have violated § 4056(1)(N) is constitutionally protected.

We immediately note that arguments 3) and 4) were not raised by the defendant in her appeal to the Superior Court and, accordingly, were not ruled on by the Justice below.[5] As to these issues, "[W]e see no reason to depart from our sound tenet of appellate practice that '[A]n issue raised for the first time at the appellate stage will be denied cognizance in the appellate review of the case.'" *Atlantic Acoustical & Insulation Co. v. Moreira*, Me., 348 A.2d 263, 266, n. 1 (1975), citing *Walsh v. City of Brewer*, Me., 315 A.2d 200, 209 (1974). This rule is controlling even when, as here, the belatedly raised issues allege constitu-

---

within this State. After hearing, the Administrative Hearing Commissioner, as designated in Title 5, chapters 301 to 307, shall have the power to suspend or revoke any license issued under this chapter, at any time where the licensee has by false or fraudulent representation obtained a license or where the licensee, in performing or attempting to perform any of the acts mentioned herein, is deemed to be guilty of:

.    .    .    .    .

G. Failing, within a reasonable time, to account for or to remit any moneys coming into his possession which belong to others; or

.    .    .    .    .

N. Any act or conduct whether of the same or different character than hereinabove specified, which constitutes or demon-

strates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealings.

4. The Superior Court's decision makes no mention of the conditional six-month suspension of the defendant's license.

5. The single "constitutional" claim contained in the defendant's complaint filed in the Superior Court was "That 32 M.R.S.A., Section 4056, Subsection N is overly broad and vague and violates Defendant's due process rights as guaranteed by the Maine and U. S. Constitutions." The defendant does not argue on appeal that § 4056(1)(N) is "overbroad," as distinguished from "vague," and we consider that any contention by the appellant that the statute is overbroad has been abandoned. *MacArthur v. Dead River Company*, Me., 312 A.2d 745, 746 (1973).

tional violations. *Reville v. Reville*, Me., 289 A.2d 695, 697 (1972); *Younie v. State*, Me., 281 A.2d 446, 448–49 (1971).

We therefore confine our discussion to the first two issues identified by the appellant.

■ Before turning to these substantive questions, we are obliged to mention that this case has come to us in a somewhat peculiar posture. Although the Commissioner's decision contains purported "findings of fact," what actually appears under that heading in the decision is a detailed recitation of the evidence adduced at the hearing, rather than "a concise statement of the conclusions on each contested issue of fact," as required by 5 M.R.S.A. § 2407(1). Technically, then, the Superior Court was not properly apprised of the factual findings on which the Commissioner's decision was predicated.[6] Nonetheless, the Commissioner's recitation of the evidence was considered by the presiding Justice as though it were a statement of findings of fact and as such was accepted as conclusive. Since there is no dispute at this stage of the litigation as to the factual premises of the Commissioner's decision and the court's partial affirmance thereof, we see no compelling reason why this Court should otherwise treat the Commissioner's evidentiary summary.

## I.

*Is § 4056(1)(N) Unconstitutionally Vague?*

The defendant asserts that § 4056(1)(N) is "void for vagueness." We disagree.

■ It is a fundamental requirement of the due process clauses of the Maine and the United States Constitutions, Art. I, § 6-A, Amend. XIV, § 1 respectively, that a statute "must provide reasonable and intelligible standard to guide the future conduct of individuals and to allow the courts and enforcement officials to effectuate the legislative intent in applying these laws." *Shapiro Brothers Shoe Co., Inc. v. Lewiston-Auburn Shoeworkers Protective Association*, Me., 320 A.2d 247, 253 (1973) (footnote omitted). A statute which fails to meet this test, *i. e.*, that "sets guidelines which would force men of general intelligence to guess at its meaning, leaving them without assurance that their behavior complies with legal requirements and forcing courts to be uncertain in their interpretation of the law," *Id.*, is characterized as "void for vagueness."

Although the void-for-vagueness doctrine receives its commonest application in the criminal law context, "[T]he doctrine has [also] been applied in instances where one must conform his conduct to a civil regulation." *Id.* (Footnote omitted.) See also *Swed v. Inhabitants of Bar Harbor*, 158 Me. 220, 182 A.2d 664 (1962); *State v. The Fantastic Fair and Karmil Merchandising Corp.*, 158 Me. 450, 467–71, 186 A.2d 352, 363–65 (1961).

Subsections A through M of § 4056(1) describe specific acts of misconduct which constitute grounds for the suspension or revocation of a real estate broker's or real estate salesman's license. Subsection N of § 4056(1) sets out an additional ground: "Any act or conduct whether of the same or different character than [those acts specified in §§ A–M], which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealings."[7]

6. The Superior Court docket entries do indicate, however, that a record of the proceedings before the Commissioner was transmitted to the court in accordance with 5 M.R.S.A. § 2451(4), thereby furnishing the presiding Justice with the complete evidentiary record on which the Commissioner's decision was based. The parties have not seen fit to designate such record for inclusion in the record on appeal to the Law Court.

7. It is instructive to note that other states have provisions which are virtually identical to § 4056(1)(N). See, *e. g.*, Code of Ala., Tit. 46, §§ 311(12), 311(21) (Cum.Supp. 1973); Kans.Stat.Ann. § 58-3015(a)(17)

■ The manifest purpose of § 4056(1) is to protect the public from improper conduct on the part of real estate brokers and salesmen. Subsection N proscribes "bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealings," not in the abstract, but *on the part of real estate brokers and salesmen.* Subsection N is, in effect, a codification of the normative standards which guide the conduct of the members of the real estate profession. Subsection N is sufficiently definite to apprise those in the profession of the line between permissible and forbidden conduct.

■ Subsection N is not unconstitutionally vague merely because it does not delineate precise instances of proscribed conduct. The statutory terms "bad faith," "incompetency," "untrustworthiness," and "dishonest, improper or fraudulent dealings" are neither so general that persons of common intelligence must guess at their meaning, nor so indefinite as to defy even-handed interpretation by the judiciary. The observation of Mr. Justice White, writing in an analogous context for a majority of the Supreme Court in *United States Civil Service Commission v. National Association of Letter Carriers,* 413 U.S. 548, 578–79, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796, 816 (1973) is apposite:

> [T]here are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with . . . .

We hold that § 4056(1)(N) is not unconstitutionally vague.

## II.

*Was the Court Correct in Affirming the Commissioner's Determination that the Defendant Violated § 4056(1)(N)?*

The defendant has no quarrel with the evidence which was adduced at the hearing before the Commissioner. Rather, she contends that *on this evidence,* she should not have been found guilty of violating § 4056(1)(N).

The evidence may be briefly summarized as follows:

■ In March, 1971, Kelby, a licensed real estate broker with an office in Brunswick, was contacted by one Donald Mac-Millan who asked her to handle the sale of his residence in Topsham. The defendant and MacMillan signed a contract granting the defendant an exclusive right to sell the property for a period of ninety days, and providing for a broker's commission of $500.

Upon the expiration of this contract, MacMillan continued to "list" the property with the defendant, although on a non-exclusive basis. MacMillan and the defendant did not embody their non-exclusive listing agreement in a written contract, however, and had no discussion with regard to the amount of the broker's commission under this new arrangement.[8]

In August, 1971, Kelby obtained a buyer for the MacMillan property and drafted a purchase and sale contract which she forwarded to MacMillan, now a resident of Connecticut, for his signature. The con-

---

(1963); Ann.Code of Md., Art. 56, § 224(s) (Replacement Vol. 5B 1972); Miss.Code Ann. § 73–35–21(m) (1972); Oreg.Rev.Stat. § 696.301(32) (1975).

**8.** The defendant testified that in July, 1971, she and MacMillan had a phone conversation during which she inquired about his commis-

sion arrangements with other brokers with whom he had listed his property on a non-exclusive basis, Kelby conceded that she did not specifically ask MacMillan what he would pay her as a commission if she succeeded in selling the property pursuant to the non-exclusive listing agreement that she and Mac-Millan had reached.

tract was silent as to the amount of the broker's commission. MacMillan signed the contract and returned it to the defendant.

Kelby attended the closing of the sale of the MacMillan property in October, 1971 as "agent for MacMillan" and retained $1,000 out of the purchase price of the property as her commission. She subsequently mailed a closing statement, along with her receipt for a $1,000 "non-exclusive real estate commission" to MacMillan in Connecticut. When MacMillan received this material, he immediately phoned Kelby and informed her that it was his understanding that their agreement called for a $500 commission. The defendant agreed with MacMillan and promised to refund $500 to him.

Her promise notwithstanding, Kelby subsequently decided not to refund $500 to MacMillan. Despite MacMillan's repeated attempts to contact the defendant by phone, she refused to offer an explanation for her decision not to refund the $500 as she had promised, or even to make herself available to discuss the matter of the commission with him. In fact, the defendant successfully resisted all MacMillan's efforts to communicate with her until he finally resorted to complaining to the Real Estate Commission.

The Commissioner concluded, on the basis of this evidence that, as a matter of law, the defendant's conduct demonstrated "bad faith" and constituted "improper dealings" under § 4056(1)(N). The presiding Justice agreed that the defendant's conduct was within the purview of the statute.

We concur in the judgment of the presiding Justice. Although the defendant and her client, Mr. MacMillan, had an apparent mutual misunderstanding with regard to the fee which was due to the defendant upon the sale of the MacMillan property in October, 1971, the defendant's conceded promise to remit $500 to MacMillan, coupled with her subsequent refusal to do so, clearly constituted "improper dealings." The defendant exacerbated the situation by stubbornly avoiding MacMillan's inquiries about the fee. Her conduct from the time she promised to return $500 to MacMillan, until MacMillan finally complained to the Real Estate Commission manifested consistent "bad faith" toward her client. Further elaboration on our part would serve no useful purpose. The Commissioner and the court below were correct in finding that the defendant violated § 4056(1)(N), and the entry must be:

Appeal denied.

All Justices concurring.

WEATHERBEE, J., sat at oral argument and participated in conference but died before this opinion was adopted.