MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2023 ME 61
Docket:       And-22-396
Argued:       June 7, 2023
Decided:      September 5, 2023

Panel:        STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and DOUGLAS, JJ.

DANIEL WOOD

v.

DEPARTMENT OF INLAND FISHERIES AND WILDLIFE

DOUGLAS, J.

[¶1]  Daniel Wood appeals from a judgment of the Superior Court (Androscoggin County, *Stewart, J.*) affirming the decision of the Commissioner of the Department of Inland Fisheries and Wildlife to revoke or suspend Wood's hunting license for three years and his guide license for one year.  He argues that the Commissioner misinterpreted a statute as requiring a mandatory revocation of his hunting license; that the statute governing revocation of hunting licenses is unconstitutionally vague; and that Department rules establishing standards of competency, which the Commissioner relied upon in revoking his guide license, result from an unconstitutional delegation of authority by the Legislature.  We affirm the judgment.

2

## I. BACKGROUND

[¶2]  Based on an incident in November 2018, the State charged Wood with discharge of a firearm or crossbow near a dwelling (Class E), 12 M.R.S. § 11209(1)(A), (2) (2023).[1]  Through a subsequent plea agreement, Wood was charged with, and pleaded guilty to, reckless conduct (Class D), 17-A M.R.S. § 211 (2023),[2] and the State dismissed the initial charge.  On January 6, 2022, the court (*Lawrence, J.*) signed the judgment and commitment, ordering Wood to pay a $1,000 fine.

[¶3]  By letter dated January 25, 2022, the Commissioner notified Wood that pursuant to 12 M.R.S. § 10902 (2023) his "privilege to obtain a hunting license and [his] right to apply for or obtain a hunting license from the Maine Department of Inland Fisheries and Wildlife [was] revoked effective

---

[1]  Although this statute was amended after the conduct at issue here, we cite the current statute because the amendment was merely syntactical to accommodate an additional paragraph and did not make any substantive change to the offense charged.  *See* P.L. 2021, ch. 74, § 2 (effective Oct. 18, 2021) (codified at 12 M.R.S. § 11209(1)(A) (2023)).  The statute provides, with certain exceptions not relevant here, that "[a] person may not . . . discharge a firearm . . . or cause a projectile to pass as a result of that discharge within 100 yards of a building or residential dwelling without the permission of the owner or, in the owner's absence, of an adult occupant of that building or dwelling authorized to act on behalf of the owner."  12 M.R.S. § 11209(1)(A).

[2]  "A person is guilty of reckless conduct if he recklessly creates a substantial risk of serious bodily injury to another person."  17-A M.R.S. § 211(1) (2023).  "A person acts recklessly with respect to a result of the person's conduct when the person consciously disregards a risk that the person's conduct will cause such a result."  17-A M.R.S. § 35(3)(A) (2023).  "[T]he disregard of the risk, when viewed in light of the nature and purpose of the person's conduct and the circumstances known to the person, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation."  *Id.* § 35(3)(C).

01/06/2022 to 01/06/2025" because of his conviction for reckless conduct. The letter explained that the one-year period from January 6, 2022, to January 6, 2023, represented a mandatory revocation under section 10902 and that the additional, three-year, concurrent suspension period ending on January 6, 2025, was nonmandatory and was being imposed in the discretion of the Commissioner. In a second letter of the same date (January 25, 2022), the Commissioner notified Wood that his "privilege to obtain a guide license and [his] right to apply for or obtain a guide license from the Maine Department of Inland Fisheries and Wildlife [were] revoked effective 01/25/2022 to 01/25/2023" because of the same conviction. *See* 12 M.R.S. §§ 10902, 10908 (2023). Both letters informed Wood of his right to an administrative hearing if requested in writing within thirty days "after receipt of notice" of the decision to revoke or suspend the license.[3]

---

[3] By statute, the hunting license could be *revoked* for a mandatory one-year period upon the conviction of a crime that was committed "while . . . in the pursuit of wild animals," 12 M.R.S. § 10902 (4)(A) (2023), but it could also be *suspended* for a nonmandatory period, *id.* § 10902(1), whereas the guide license could be either revoked *or* suspended based on a violation of standards of competency, 12 M.R.S. § 10908 (2023).

In her decision and her letters to Wood, the Commissioner appears to conflate the terms "revocation" and "suspension" as used in the pertinent statutes. *See id.* §§ 10902(1), (4)(A), 10908. For example, in her final decision signed on May 27, 2022, she reported that Wood's hunting license, and right to apply for or obtain a hunting license, had been "revoked" for a three-year period but then specified that she had "imposed a one-year mandatory suspension . . . and an additional [concurrent] three-year non-mandatory suspension" of that license. She later referred to a "three-year, non-mandatory revocation" of the hunting license. Her January 25, 2022, letter to Wood concerning the hunting license bore a heading referencing mandatory and nonmandatory periods of

4

[¶4]   Wood timely requested an administrative hearing as to the Commissioner's decision on both licenses.  At the hearing, held on April 27, 2022, both Wood and the game warden who investigated the November 2018 incident testified; and the Department introduced without objection its file on the matter, which included the game warden's report.  The following facts are supported by the record and are not in dispute.

[¶5]  Wood, a registered Maine Guide, shot a deer from a public road in Lewiston.  According to the game warden's report, a witness had observed

"[r]evocation," but it also referred to a one-year "mandatory minimum suspension period required by State law."  Similarly, the Commissioner's January 25, 2022, letter to Wood regarding his guide license bore a heading referring to "[r]evocation" of the license, but it also included the following paragraph referring to a "suspension" of that license:

> Maine is a member state of the Interstate Wildlife Violator Compact (IWVC) and as such has entered your name and terms of suspension into the IWVC database.  Your hunt/fish/trap privileges may be suspended in all member states for the duration of your suspension in Maine.  If you wish to hunt/fish/trap in another state during the period of time your Maine hunt/fish/trap privileges are revoked, it is your responsibility to contact that state[']s fish and wildlife agency to determine your eligibility to purchase a recreational license.

The two terms are not defined in Title 12, but the dictionary definitions of the terms highlight the difference between the two.  *See Suspend*, *American Heritage Dictionary of the English Language* (5th ed. 2016) (defining "suspend" to mean "[t]o bar for a period from a privilege"); *Revoke*, *American Heritage Dictionary of the English Language* (defining "revoke" to mean "[t]o invalidate or cause to no longer be in effect, as by voiding or canceling").  Thus, based on the terms' ordinary meanings, a suspended license would be returned to active status at the end of the suspension period (unless it had expired according to its original terms), whereas a revoked license would be canceled and the holder required to apply for the license anew after the period of the revocation.  Although the distinction between the two terms has not been raised as an issue in this appeal, we endeavor to use the terms consistently with the statutes, and we understand the Commissioner to have revoked Wood's hunting and guide licenses for one year, though she imposed a nonmandatory period of *suspension* of the hunting license.

Wood's truck stopped in the roadway, facing in the wrong direction with its driver's door open. While leaning on the passenger-side mirror and pointing his firearm in the direction of a residence, Wood aimed and fired, killing a deer. Subsequent measurements established that the deer was standing eighty-six yards from the residence when struck by the bullet fired by Wood.

[¶6] Wood did not dispute that he shot the deer in the manner described in the game warden's report or that the deer was within 100 yards of the residence when it was hit. *See* 12 M.R.S. § 11209(1)(A).[4] He did not dispute that he pleaded guilty to and was convicted of reckless conduct under 17-A M.R.S. § 211 based on the same conduct. Rather, he argued that the statutes and regulations under which his licenses were revoked or suspended are overbroad,[5] vague, and standardless. He further argued that the revocation of his hunting license would be mandatory only if he were convicted of a crime for which the act of hunting was an element of the offense.

---

[4] *See also* 12 M.R.S. § 11208 (2023) (classifying shooting at an animal from any public paved way as a Class E crime).

[5] Wood also contends in his brief here that the statute is overbroad, but he cites no cases on overbreadth. An overbreadth argument is inapposite here because it is grounded in the First Amendment, *see State v. Cropley*, 544 A.2d 302, 304 (Me. 1988), and nothing in Wood's conduct involved speech. Accordingly, we consider Wood's argument on appeal to be based on vagueness.

6

[¶7]  In a May 27, 2022, decision, the Commissioner determined that (1) Wood's conviction for reckless conduct, 17-A M.R.S. § 211, in these circumstances "is sufficient grounds for the revocation of Wood's hunting license, and of his right to apply for or obtain a hunting license" under 12 M.R.S. § 10902(4)(A) and (2) section 10902 "was properly applied" as to the mandatory one-year revocation.  Given the nature of Wood's actions, she also found that an additional, three-year, concurrent nonmandatory suspension of the right to apply for a hunting license was appropriate.  She then reasoned that the revocation of Wood's guide license was justified because Wood failed to meet the Department's standards of competency for a guide, which require, among other things, that a guide have "experience based judgment" that will ensure safety and that the guide understand and abide by all laws and rules involving the licensed activities.  09-137 C.M.R. ch. 24, § 24.08(A)(3), (5) (effective April 13, 2021).[6]

[¶8]  Wood timely petitioned the Superior Court for review of the Department's final agency action.  *See* 5 M.R.S. §§ 11001, 11002 (2023);

---

[6] Although section 24.08 has been amended since the 2018 incident that led to the revocation or suspension of Wood's licenses, the relevant subsections were not affected.  *Compare* 09-137 C.M.R. ch. 24, § 24.08(A)(3), (5) (effective April 13, 2021), *with* 09-137 C.M.R. ch. 24, § 24.08(A)(3), (5) (effective July 25, 2020).

M.R. Civ. P. 80C.  After accepting briefs from the parties, the court (*Stewart, J.*) entered a judgment on November 21, 2022, affirming the Commissioner's decisions.  Wood timely appealed.  *See* 5 M.R.S. § 11008 (2023); M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

[¶9]  We begin by summarizing the statutes at issue on appeal, then address each of the issues Wood raises.

### A.  Statutes Governing the Revocation or Suspension of Hunting and Guide Licenses

[¶10]  Section 10902 of Title 12 of the Maine Revised Statutes sets out the circumstances under which the Commissioner may revoke or suspend a person's hunting license (or the right to apply for a hunting license).[7] Subsection 1 provides, in part, that "[a]ny conviction or adjudication for a violation of this Part is grounds for suspension of any license or permit issued under this Part.  Except where provided by law, the commissioner shall determine the suspension period."  12 M.R.S. § 10902(1).  Subsection 4 provides:

> A person's license must be revoked under the following circumstances.

---

[7] *See supra* n.3.

**A.** If a person holding a license or permit under . . . chapter [913] is convicted of the violation of any provision of Title 17-A while on a hunting or fishing trip or in the pursuit of wild animals, wild birds or fish, the commissioner shall revoke the license or permit held by that person for a period of at least one year, except when the killing or wounding of a human being has occurred, in which case the commissioner shall revoke the license or permit for at least 5 years.

*Id.* § 10902(4); *see* 12 M.R.S. §§ 10751-10759 (2023) (establishing, in chapter 913, the Department's authority to issue licenses under part 13 of Title 12, which governs inland fisheries and wildlife); 12 M.R.S. § 11101 (2023) (particularly authorizing, within part 13 of Title 12, the issuance of a hunting license).

[¶11]   A person holding a guide license is subject to professional standards of conduct adopted by the Commissioner through the agency rulemaking process.  *See* 12 M.R.S. § 12851 (2023); 5 M.R.S. §§ 8051-8064, 8071(3) (2023); 09-137 C.M.R. ch. 24, § 24.08.  Section 12851 authorizes the Commissioner, with the advice and consent of the Advisory Board for the Licensing of Guides, to adopt rules in several areas, including rules setting out standards of competency for guides.  12 M.R.S. § 12851(3).  Among other things, the standards of competency that were adopted require a guide to "[h]ave experience based judgment that helps prevent unsafe situations" and "[f]ully understand and abide by all state and federal laws and rules involving the

activities in the classification(s) for which the Guide is licensed." 09-137 C.M.R. ch. 24, § 24.08(A)(3), (5).

## B.    Wood's Appeal

[¶12]   Wood challenges (1) the Commissioner's interpretation of the statute mandating revocation of his hunting license for one year; (2) the constitutionality of the statute governing hunting license revocation and suspension; and (3) the constitutionality of the legislative delegation of authority to establish standards of competency for licensed guides.

### 1.    Interpretation of Section 10902(4)(A)

[¶13]   Wood contends that the revocation of his hunting license was not required by section 10902(4)(A) because the Title 17-A offense of which he was convicted did not include as one of its elements that he was engaged in the pursuit of a wild animal.   Wood argues that "while he was convicted of an offense under Title 17-A, he was not convicted of doing so while hunting, fishing or pursuing wild animals, as the statute clearly requires."

[¶14]   "[W]hen the trial court has acted in an intermediate appellate capacity, we review directly the original decision of the fact-finding agency, without deference to the ruling on the intermediate appeal by the court from which the appeal is taken." *Black v. Bureau of Parks & Lands*, 2022 ME 58, ¶ 25,

288 A.3d 346 (quotation marks omitted). We review de novo questions of statutory interpretation involved in Rule 80C appeals. *Ouellette v. Saco River Corridor Comm'n*, 2022 ME 42, ¶ 8, 278 A.3d 1183. In interpreting a statute, we look to its plain meaning, reading its language in harmony with the entire statutory scheme in which it appears, and interpret the statutory language "to avoid absurd, illogical or inconsistent results." *Jackson Lumber & Millwork Co. v. Rockwell Homes, LLC*, 2022 ME 4, ¶ 10, 266 A.3d 288 (quotation marks omitted).

[¶15] The language of section 10902(4)(A) is very clear. It does not require that an element of the predicate Title 17-A offense involve the act of "hunting, fishing or pursuing wild animals" as Wood suggests. Rather, the statute plainly says that if a licensee "is convicted of the violation of *any provision* of Title 17-A while on a hunting or fishing trip or in the pursuit of wild animals," a mandatory one-year license revocation is triggered. 12 M.R.S. § 10902(4)(A) (emphasis added). In other words, nothing in section 10902(4)(A) requires that the underlying criminal conviction involve the act of hunting, fishing, or pursuit of wild fish, fowl, or game. A violation of "any provision of Title 17-A" is sufficient so long as it was committed "while on a hunting or fishing trip or in the pursuit wild animals, wild birds or fish." *Id.*

[¶16]  This interpretation makes sense in the context of section 10902, which includes multiple provisions authorizing the Commissioner to revoke or suspend a license when a licensed person's conduct while hunting has threatened public safety.  *See, e.g.*, 12 M.R.S. § 10902(5) (authorizing revocation or suspension if a person "killed, wounded or recklessly endangered the safety of another human being while hunting"); *id.* § 10902(6)(B) (requiring suspension of a hunting license for at least a year when a person is convicted of hunting while under the influence of intoxicating liquor or drugs).  It is also consistent with the administrative duties and responsibilities of the Commissioner to enforce fish and game laws in a manner that protects public safety.  *See* 12 M.R.S. § 10103(2) (2023) ("[T]he commissioner has general supervision of the administration and enforcement of the inland fisheries and wildlife laws . . . ."); *see also* 12 M.R.S. § 10108(1), (6-A) (2023) (requiring the Commissioner to establish training programs in firearm and crossbow hunting safety); 12 M.R.S. § 10104(1) (2023) (authorizing the Commissioner to adopt rules necessary for the enforcement of the laws the Department is responsible for administering); 09-137 C.M.R. § 16.04 (2023) (requiring those using a firearm or crossbow to wear articles of hunter orange clothing during designated seasons).

[¶17]   Here, Wood does not dispute that the conduct underlying his Title 17-A conviction for reckless conduct involved his pursuit of a wild animal; he has admitted that he acted recklessly in shooting a deer.   There was substantial evidence—as required for an administrative determination—to support the Commissioner's finding that Wood was convicted of a Title 17-A offense—reckless conduct under 17-A M.R.S. § 211—and that the underlying conduct occurred while Wood was engaged in the pursuit of a wild animal. *See* 12 M.R.S. § 10902(4)(A); *Richard v. Sec'y of State*, 2018 ME 122, ¶ 21, 192 A.3d 611 ("Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion." (quotation marks omitted)).   The Commissioner's interpretation of section 10902(4)(A) was correct, and her action revoking Wood's hunting license for the mandatory minimum one-year period was supported by substantial evidence adduced at the administrative hearing.

### 2.   Constitutionality of the Statute Governing Hunting License Revocation and Suspension

[¶18]   Wood argues that section 10902 is unconstitutionally vague because (1) it does not convey to a reasonable person that a conviction of reckless conduct, 17-A M.R.S. § 211, which includes no requirement of a connection to hunting, can result in a mandatory hunting license revocation

(and an additional discretionary license suspension); and (2) it provides the Commissioner with such wide discretion that individuals, including Wood, can be targeted arbitrarily for license revocation.[8]

[¶19]  We review issues of constitutional interpretation de novo.  *In re Weapons Restriction of J.*, 2022 ME 34, ¶ 12, 276 A.3d 510.  The party challenging the constitutionality of a statute has "the heavy burden of overcoming the presumption that the statute is constitutionally valid."  *Ford Motor Co. v. Darling's*, 2014 ME 7, ¶ 33, 86 A.3d 35 (quotation marks omitted).

[¶20]  Due process under the United States Constitution, U.S. Const. amend. XIV, § 1, requires that a statute "provide reasonable and intelligible standard[s] to guide the future conduct of individuals and to allow the courts and enforcement officials to effectuate the legislative intent in applying these laws."  *Me. Real Est. Comm'n v. Kelby*, 360 A.2d 528, 531 (Me. 1976) (quotation marks omitted).  "[A] statute is vague when its language either forbids or requires the doing of an act in terms so vague that people of common intelligence must guess at its meaning, or if it authorizes or encourages

---

[8]  Although Wood has, through his case citations, alluded to both the federal Due Process Clause and article 1, section 6-A of the Maine Constitution, he has developed no independent analysis of the Maine clause.  Any reliance on the Maine Constitution to support his claim is therefore waived, and we focus on the federal Due Process Clause, applicable here through the Fourteenth Amendment.  *See* U.S. Const. amend. XIV, § 1; *State v. Moore*, 2023 ME 18, ¶ 20, 290 A.3d 533.

arbitrary and discriminatory enforcement." *Uliano v. Bd. of Env't Prot.*, 2009 ME 89, ¶ 15, 977 A.2d 400 (quotation marks omitted). The focus is "on the need for adequate notice." *Doane v. Dep't of Health & Hum. Servs.*, 2021 ME 28, ¶ 17, 250 A.3d 1101.

[¶21] As discussed above, the meaning of section 10902(4)(A) is clear. If one is convicted of "any" Title 17-A offense while in pursuit of a wild animal, a license revocation is required. 12 M.R.S. § 10902(4)(A). As applied here, Wood, a registered Maine Guide, was convicted of a Title 17-A offense that not only occurred while he was in pursuit of a deer, but the conduct itself—shooting at a deer near a residence—was the basis for the conviction. *See* 17-A M.R.S. § 211; *see also* 12 M.R.S. § 10902(4)(A). He admitted to the conduct. A person of common intelligence, and especially a person in Wood's position, reading the statute in the context of the entire statutory scheme, *see Jackson Lumber & Millwork Co.*, 2022 ME 4, ¶ 10, 266 A.3d 288, would not have to guess at the statute's meaning to understand that the Commissioner could make findings that form part of the basis for Wood's license revocation, particularly in the circumstances presented here. *See* 12 M.R.S. § 10902(4)(A), 10905 (2023). Nor would a person have to guess at whether the statute requires revocation if a person is convicted of a crime for shooting toward a residence

while hunting a deer that was less than 100 yards away from that residence.[9] *See id.* § 10902(4)(A); *Uliano*, 2009 ME 89, ¶ 15, 977 A.2d 400.

[¶22]    Section 10902(1)—the authority for the Commissioner's discretionary suspension of Wood's hunting license for an additional two years—provides that upon adjudication of a violation of an Inland Fisheries and Wildlife statute, the Commissioner may either suspend a license, *id.* § 10902(1), or refuse to issue one, *id.* § 10902(2).  Thus, the Commissioner was authorized, based on her adjudication that Wood violated section 10902(4)(A), to determine that Wood would not be eligible to apply for or obtain a hunting license for a period of time beyond the mandatory revocation period.  Although the Commissioner's discretion might not be defined with particularity for purposes of the nonmandatory suspension period, some guidance is provided by the minimum revocation period of five years that applies when "the killing or wounding of a human being has occurred."  *Id.* § 10902(4)(A).  Given the statutory scheme and the circumstances presented here, the discretionary authority in section 10902(1) to suspend a hunting license for additional years

---

[9] We do not opine on the more ambiguous situation in which a person "on a hunting or fishing trip" commits a crime unrelated to hunting or fishing while on that trip.  12 M.R.S. § 10902(4)(A). Presumably, the Commissioner will not be inclined to revoke a license if a person's conduct is not connected in any way to activities that a hunting or fishing license regulates.

is not so vague as to fail to provide notice or encourage arbitrary or discriminatory enforcement, *id.* § 10902(1), (2), (4)(A); *see Doane*, 2021 ME 28, ¶ 17, 250 A.3d 1101, and the three-year term of revocation and suspension ultimately imposed on him is consistent with the statutory scheme. Wood has not overcome the presumption of constitutionality to demonstrate that the statute is unconstitutionally vague. *See Irish v. Gimbel*, 1997 ME 50, ¶ 6, 691 A.2d 664.

### 3. Delegation of Authority

[¶23] The Commissioner revoked Wood's guide license for violating standards of conduct that were established through agency rulemaking. Wood contends that the Legislature unconstitutionally delegated to the Commissioner its legislative authority to adopt the standards of conduct and that those standards, as applied, allowed the Department to target Wood arbitrarily for license revocation.

[¶24] With respect to the regulation of guides, the Legislature conferred rulemaking authority on the Commissioner:

> The commissioner shall, with the advice and consent of the Advisory Board for the Licensing of Guides, adopt rules necessary to administer this chapter. . . . The commissioner shall establish safety standards to provide the clients of guides reasonable protection from hazards.

12 M.R.S. § 12851.[10]  The Legislature specifically authorized the Commissioner to "establish standards of competency that must be provided to each applicant." *Id.* § 12851(3).  Among other standards of competency adopted through the rulemaking process are the requirements that a guide "[h]ave experience based judgment that helps prevent unsafe situations" and "[f]ully understand and abide by all state and federal laws and rules involving the activities in the classification(s) for which the Guide is licensed."  09-137 C.M.R. ch. 24, § 24.08(A)(3), (5).  The question is whether these standards were adopted through a lawful delegation of authority.

[¶25]  "An 'excessive delegation' claim is based on the separation of powers clause of the Maine Constitution, which precludes a statutory delegation to a regulator so broad or amorphous that it amounts to a surrender of legislative authority to the executive branch."  *Doane*, 2021 ME 28, ¶ 17, 250 A.3d 1101; *see* Me. Const. art. III, § 2.  "[L]egislation delegating discretionary authority to an administrative agency is unconstitutional if it fails to contain standards sufficient to guide administrative action."  *Uliano*, 2009 ME 89, ¶ 15, 977 A.2d 400 (quotation marks omitted).  "[I]n delegating power to an

---

[10]  The Advisory Board for the Licensing of Guides includes four public members in addition to a subordinate officer of the Department, two wardens, and a marine patrol officer of the Department of Marine Resources.  *See* 12 M.R.S. § 10153(1) (2023).

administrative agency, the legislative body must spell out its policies in sufficient detail to furnish a guide which will enable those to whom the law is to be applied to reasonably determine their rights thereunder, and so that the determination of those rights will not be left to the purely arbitrary discretion of the administrator." *Stucki v. Plavin*, 291 A.2d 508, 510 (Me. 1972). "[W]hile the amount of discretion the Legislature can bestow upon a state agency is not boundless, latitude must be given in areas where the statutory enactment of detailed specific standards is unworkable." *Doane*, 2021 ME 28, ¶ 27, 250 A.3d 1101.

[¶26] In addition to legislative specificity in a delegation of authority, the rulemaking process required by Maine's Administrative Procedure Act enhances accountability and ensures that the resulting regulations appropriately limit the authority of the agency and avoid arbitrary standards.[11] *See Uliano*, 2009 ME 89, ¶ 28, 977 A.2d 400 (stating that the rulemaking process provides "significant protection against abuses of discretion by the Board in exercising its rule-making authority" and "compensates substantially for the

---

[11] *Cf. Kosalka v. Town of Georgetown*, 2000 ME 106, ¶¶ 5, 17, 752 A.2d 183 (holding that a municipal ordinance provision requiring that proposed campgrounds "conserve natural beauty" was so "totally lacking in cognizable, quantitative standards" that it was arbitrary and amounted to an unlawful delegation of authority (quotation marks omitted)).

want of precise legislative guidelines" (alteration and quotation marks omitted)); *see generally* 5 M.R.S. §§ 8051-8064. "The possibility of arbitrary administrative decision-making common to both void-for-vagueness and excessive-delegation concerns is assuaged by the formal APA rulemaking process." *Doane*, 2021 ME 28, ¶ 22, 250 A.3d 1101. The rulemaking process includes the provision of notice to the public and pertinent legislative committees, 5 M.R.S. §§ 8053, 8053-A; a comment period, *see id.* § 8057-A(3); and an opportunity for aggrieved persons to seek judicial review, *see id.* § 8058.[12]

[¶27] Here, the Legislature acted well within constitutional bounds in delegating authority to the Commissioner to adopt competency standards through the APA rulemaking process based on the Department's expertise. *Uliano*, 2009 ME 89, ¶ 28, 977 A.2d 400; *Doane*, 2021 ME 28, ¶ 22, 250 A.3d 1101. The standards are among the authorized "safety standards" that "provide the clients of guides reasonable protection from hazards." 12 M.R.S. § 12851. The standards at issue here—requiring that a guide avoid committing crimes while hunting and possess "experience based judgment" to prevent unsafe

---

[12] These procedures apply to the "routine technical rules" adopted by the Commissioner here. 12 M.R.S. § 12851 (2023); 5 M.R.S. § 8071(3) (2023) (providing that only subchapter 2 of the APA applies to routine technical rules); *see* 5 M.R.S. §§ 8051-8064 (2023) (subchapter 2 of the APA).

situations, 09-137 C.M.R. ch. 24, § 24.08(A)(3), (5)—are neither arbitrary nor unreasonable; they are directly related to the safety concerns the Legislature directed the Commissioner to safeguard through rulemaking. *See* 12 M.R.S. § 12851; *Stucki*, 291 A.2d at 510. As applied to Wood, the standards were sufficiently clear to warn of the revocation of his guide license if he either (1) showed poor judgment by deciding, despite his years of experience, to create a threat to the safety of others or (2) committed the crime of reckless conduct, 17-A M.R.S. § 211, in shooting at a deer from a public roadway and in the direction of a residence. *See* 09-137 C.M.R. ch. 24, § 24.08(A)(3), (5); 12 M.R.S. § 10902(4)(A); *see also Kelby*, 360 A.2d at 532 (holding that the "terms 'bad faith,' 'incompetency,' 'untrustworthiness,' and 'dishonest, improper or fraudulent dealings' are neither so general that persons of common intelligence must guess at their meaning, nor so indefinite as to defy evenhanded interpretation").

The entry is:

Judgment affirmed.

_____

Verne E. Paradie, Jr., Esq. (orally), Lewiston, for appellant Daniel Wood

Aaron M. Frey, Attorney General, and Mark Randlett, Asst Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Department of Inland Fisheries and Wildlife

Androscoggin County Superior Court docket number AP-2022-04
FOR CLERK REFERENCE ONLY